IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Steven D. Davis, | Case No. 8:11-cv-01367-JFA-JDA |
| Plaintiff, | **REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE** |
| v. | |
| Officer A. Williams, Officer Lomax, Danielle Mitchell, and Brenda Pivovarnik,[1] | |
| Defendants. | |

This matter is before the Court on a motion for summary judgment filed by Defendants. [Doc. 29.] Plaintiff is proceeding pro se and brings this civil rights action pursuant to 42 U.S.C. § 1983, generally alleging a violation of his constitutional rights when Defendants read Plaintiff's legal mail. [Doc. 1.] Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(e), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and to submit findings and recommendations to the District Court.

## BACKGROUND

Plaintiff alleges that, on October 8, 2010, Defendants Officer A. Williams ("Williams") and Officer Lomax ("Lomax") came to Dorm Z-2 around 9:30 p.m., and Williams was reading Plaintiff's legal mail from family court. [Doc. 1 at 3.] The mail had been opened

---

[1] On October 5, 2011, Defendants Danielle Mitchell and Brenda Pivovarnik were dismissed from this action with prejudice. [Doc. 32.] Thus, any reference to "Defendants" in this Report and Recommendation is to Defendants Officer A. Williams and Officer Lomax.

in another part of the jail outside Plaintiff's presence. [*Id.*] Plaintiff contends the envelope was not with the cover sheet, summons, notice of hearing, complaint for intervention, and amended treatment plan. [*Id.*] When Plaintiff asked for a grievance form and to speak to the sergeant in charge about Defendants' conduct, Lomax told Plaintiff the conduct was not a grievance matter. [*Id.* at 3–4.] Plaintiff further alleges he asked another officer for a grievance form but that officer told Plaintiff he would have to make a copy of the legal court papers for Plaintiff to get a grievance form. [*Id.* at 4.] Plaintiff seeks $125,000 from Defendants for violating his constitutional rights. [*Id.* at 3.]

## APPLICABLE LAW

**Liberal Construction of Pro Se Complaint**

Plaintiff brought this action pro se, which requires the Court to liberally construe his pleadings. *Estelle*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Pro se pleadings are held to a less stringent standard than those drafted by attorneys. *Haines*, 404 U.S. at 520. Even under this less stringent standard, however, a pro se complaint is still subject to summary dismissal. *Id.* at 520–21. The mandated liberal construction means that only if the court can reasonably read the pleadings to state a valid claim on which the complainant could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999). A court may not construct the complainant's legal arguments for him. *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**Requirements for a Cause of Action Under § 1983**

This action is filed pursuant to 42 U.S.C. § 1983, which provides a private cause of action for constitutional violations by persons acting under color of state law. Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). Accordingly, a civil action under § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999).

Section 1983 provides, in relevant part,

> "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or any person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . ."

42 U.S.C. § 1983. To establish a claim under § 1983, a plaintiff must prove two elements: (1) that the defendant "deprived [the plaintiff] of a right secured by the Constitution and laws of the United States;" and (2) that the defendant "deprived [the plaintiff] of this constitutional right under color of [State] statute, ordinance, regulation, custom, or usage." *Mentavlos v. Anderson*, 249 F.3d 301, 310 (4th Cir. 2001) (third alteration in original) (citation and internal quotation marks omitted).

The under-color-of-state-law element, which is equivalent to the "state action" requirement under the Fourteenth Amendment,

> reflects judicial recognition of the fact that most rights secured by the Constitution are protected only against infringement by governments. This fundamental limitation on the scope of

> constitutional guarantees preserves an area of individual freedom by limiting the reach of federal law and avoids imposing on the State, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed.

*Id.* (quoting *Dowe v. Total Action Against Poverty in Roanoke Valley,* 145 F.3d 653, 658 (4th Cir. 1998)) (internal citations and quotation marks omitted). Nevertheless, "the deed of an ostensibly private organization or individual" may at times be treated "as if a State has caused it to be performed." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001). Specifically, "state action may be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Id.* (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)). State action requires both an alleged constitutional deprivation "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State . . . or by a person for whom the State is responsible" and that "the party charged with the deprivation [is] a person who may fairly be said to be a state actor." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). A determination of whether a private party's allegedly unconstitutional conduct is fairly attributable to the State requires the court to "begin[ ] by identifying 'the specific conduct of which the plaintiff complains.'" *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 51 (1999) (quoting *Blum* v. *Yaretsky,* 457 U.S. 991, 1004 (1982)).

**Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or

5

unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> >
> > (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

## DISCUSSION

**Claims Regarding Legal Mail**

Plaintiff contends Defendants' reading Plaintiff's legal mail violated his constitutional rights. [Doc. 1 at 3.] Defendants contend they did not violate Plaintiff's constitutional rights because Plaintiff has not suggested Defendants actually opened Plaintiff's mail and Plaintiff fails to allege an actual injury. [Doc. 29-1 at 3–5.] The Court agrees Plaintiff has not established a violation of his constitutional rights.

Generally, a prisoner enjoys a First Amendment right to receive and send mail, but prison officials may adopt regulations that impinge on a prisoner's constitutional rights if those regulations are "reasonably related to legitimate penological interests." *Turner v.*

6

*Safley*, 482 U.S. 78, 89 (1987).  Legitimate penological interests include preserving prison security and maintaining order and discipline.  Moreover, in noting the delicate nature of prison management, the Supreme Court has "afforded considerable deference to the determinations of prison administrators who, in the interest of security, regulate the relations between prisoners and the outside world."  *Thornburgh v. Abbott*, 490 U.S. 401, 408 (1989) (citation omitted).

The Fourth Circuit, in *Altizer v. Deeds*, 191 F.3d 540, 547–48 (4th Cir. 1999), held "the opening and inspecting of an inmate's outgoing mail is reasonably related to legitimate penological interests, and, therefore, constitutional . . . ."  However, in a footnote, the court noted "[i]nspecting an inmate's legal mail may implicate the inmate's Sixth Amendment right to communicate freely with his attorney in a criminal case."  *Id.* at 549, n.14 (citing *Wolff v. McDonnell*, 418 U.S. 539, 575 (1974)).  Legal mail may not be opened outside of the presence of the prisoner-addressee.  *See Wolff*, 418 U.S. at 575.  However, to state a claim for a constitutional violation, a plaintiff must show actual injury by the opening.  *Lewis v. Casey*, 518 U.S. 343, 352–54 (1996).  To show an actual injury, an inmate must "demonstrate that a nonfrivolous legal claim had been frustrated or was being impeded."  *Id.* at 353.  The prisoner must make specific allegations as to the actual injury sustained.  *See Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996) (holding the plaintiff failed to identify any actual injury resulting from official conduct); *Strickler v. Waters*, 989 F.2d 1375, 1384 (4th Cir. 1993) (holding the plaintiff had a "basic requirement that he show specific harm or prejudice from the allegedly denied access").

Here, even assuming Defendants opened the mail, which is not specifically alleged in the Complaint,[2] Plaintiff fails to allege specific facts that would tend to show a pending non-frivolous legal case, or any other legal matter, has been adversely affected due to his mail allegedly being opened and read outside his presence.  Plaintiff alleges, "These officers have put me in danger of being exposed to where any of the officers, or someone else whom read this information to let the state convict me.  This has made it impossible to rec[ei]ve a fair trial in my criminal case."  [Doc. 1 at 4.]  However, this conclusory allegation fails to rise to the level of a specific allegation about an actual injury sustained.  Plaintiff fails to allege anyone other than these officers saw the mail or how the officers reading the mail would have prevented Plaintiff from receiving a fair trial.  Plaintiff does not allege his access to the courts has been harmed in any way or that his mail was deliberately or negligently stolen, misplaced, or missing.

To the extent Plaintiff alleges claims pursuant to other provisions of the Constitution, such claims likewise do not provide him any relief because his claims are both frivolous and fail to state a claim upon which relief may be granted.  Plaintiff does not allege that any confidential correspondence with his attorney was disclosed, causing Plaintiff to be deprived of effective assistance of counsel. *Cf. United States v. Stotts*, 925 F.2d 83, 86–88 (4th Cir. 1991) (noting the contours of prison inmates' constitutional rights are imprecise, upholding the Bureau of Prisons' regulations regarding opening and reading mail, and noting that North Carolina's different approach to legal mail was not evidence that the

---

[2]Plaintiff alleges the mail was opened "at some other part of jail not in front of me."  [Doc. 1 at 3.] Plaintiff never alleges in the Complaint that Defendants opened the mail but does allege Defendants read the mail.  Williams does not recall the incident [Doc. 29-3]; Lomax recalls that papers were delivered to Plaintiff and that the papers were in plain view and slightly folded and does not recall the papers being in any type of envelope or mail package [Doc. 29-2].

8

Bureau of Prisons' method was unconstitutional). In fact, the alleged legal mail included court documents—a family court cover sheet, summons, notice of hearing, complaint for intervention, and amended treatment plan [Doc. 1 at 3]—that are generally public records and available for public viewing. *See Virginia Dep't of State Police v. Washington Post*, 386 F.3d 567, 575–76 (4th Cir. 2004) (noting the common law presumes a right of the public to inspect and copy all judicial records and documents). To the extent Plaintiff alleges he was deprived of his property, loss of property caused by negligence of prison officials is not a deprivation within the meaning of the Due Process Clause. *Daniels v. Williams*, 474 U.S. 327, 331–34 (1986). Moreover, the Fourth Amendment is generally not applicable to searches of prison cells, and prisoners have no legitimate expectation of privacy in their possessions. *Hudson v. Palmer*, 468 U.S. 517, 525–26 (1984). Even liberally construing the Complaint, Plaintiff's alleged facts do not state cognizable constitutional claims, and his claims are frivolous.

**Claims Regarding Grievances**

To the extent Plaintiff alleges Lomax prevented Plaintiff from filing a grievance by not providing Plaintiff a grievance form, this bare allegation, even accepted as true, fails to state a plausible claim for a violation of any constitutional right. The law is well settled that there is no constitutional right to a grievance procedure. *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 137–38 (1977). Even if the prison provides for a grievance procedure, violations of those procedures do not amount to a civil rights cause of action. *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (dismissing plaintiff's claim that he was retaliated against when he was barred access to the grievance process because "the Constitution creates no entitlement to grievance procedures or access to any such

9

procedure"); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988) (holding prison official's failure to comply with state's grievance procedure is not actionable under § 1983); *Doans v. Rice*, 831 F.2d 1057 (4th Cir. 1987) (noting inmate grievance procedures are not constitutionally required) (unpublished table decision). Thus, even if Lomax failed to provide Plaintiff with a grievance form, Plaintiff has not stated a constitutional claim.

**Qualified Immunity**

Defendants also argue they are entitled to qualified immunity because their conduct did not violate any clearly-established rights of which a reasonable government official would have known. The Court agrees.

Qualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not "violate clearly established rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Thus, qualified immunity does not protect an official who violates a constitutional or statutory right of a plaintiff that was clearly established at the time of the alleged violation such that an objectively reasonable official in the official's position would have known of the right. *Id.* Further, qualified immunity is "an immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

To determine whether qualified immunity applies, a court must determine "'whether the plaintiff has alleged the deprivation of an actual constitutional right at all[] and . . . whether that right was clearly established at the time of the alleged violation.'" *Wilson v. Layne*, 526 U.S. 603, 609 (1999) (quoting *Conn v. Gabbert*, 526 U.S. 286, 290 (1999)). "[W]hether an official protected by qualified immunity may be held personally liable for an

allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action[,] assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987) (citing *Harlow*, 457 U.S. at 819). For purposes of this analysis, a right is "clearly established" if "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 640.

District court and court of appeals judges are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). If a court decides in the negative the first prong it considers—i.e., the court decides the plaintiff has not alleged the deprivation of an actual constitutional right or the right was not clearly established at the time of the alleged violation—the court need not consider the other prong of the qualified immunity analysis. *See id.* at 243–45; *Torchinsky v. Siwinski*, 942 F.2d 257, 260 (4th Cir. 1991) (holding the court "need not formally resolve" the constitutional question of "whether the [plaintiffs] were arrested without probable cause" to address the plaintiffs' § 1983 claim; the court stated that it "need only determine whether [the defendant]—a deputy sheriff performing within the normal course of his employment—acted with the objective reasonableness necessary to entitle him to qualified immunity").

As discussed above, Plaintiff's allegations fail to demonstrate Defendants violated Plaintiff's constitutional rights. Therefore, Defendants are entitled to qualified immunity.

## **CONCLUSION**

Wherefore, based upon the foregoing, the Court recommends Defendants' motion for summary judgment [Doc. 29] be GRANTED.

IT IS SO RECOMMENDED.

<u>s/Jacquelyn D. Austin</u>
United States Magistrate Judge

April 6, 2012
Greenville, South Carolina